Continental Illinois National Bank and Trust Company, Appellee, v. Windsor Amusement Company and Harry Balaban, Appellants.

Gen. No. 38,871.

filed December 30, 1936. Rehearing denied January 12, 1937.

RANDOLPH BOHRER, of Chicago, for appellants; MILTON J. FINK, of Chicago, of counsel.

CHARLES O. RUNDALL, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff filed a forcible detainer suit against defendants for the possession of certain premises, commonly known and described as the Dearborn Theatre, 40 West Division street, Chicago. The case was tried without a jury. At the close of the testimony plaintiff, also defendants, moved for judgment. The court found that defendants were unlawfully withholding from plaintiff the possession of the premises and ordered that a writ of restitution issue therefor. Defendants appeal.

A very insufficient, unfair abstract was filed by defendants in this court. In November, 1934, the trustees of the Estate of Marshall Field purchased from the trustees of the John G. Garibaldi Trust the premises in question, which were incumbered by a mortgage; payments were in default; foreclosure proceedings involving the property were pending in the superior court of Cook county; and a receiver, Aaron Colnon, had been appointed. In August, 1933, the receiver made a lease of the premises to the Windsor Amusement Company, one of the defendants in the instant suit. The lease covered a term from May 1, 1933, until April 30, 1938, but contained the following provision:

"It is expressly understood and agreed that the term of this demise shall in no event exceed the receivership hereinabove referred to in the event said receivership shall terminate prior to April 30, 1938

. . . The rights of the Lessee under this lease are expressly subject to the foregoing provision.''

Upon payment of the purchase price by the trustees of the Estate of Marshall Field to the trustees of the John G. Garibaldi Trust, the latter trustees conveyed, subject to the Colnon-Windsor lease, their equity in the property to William J. Nealon, nominee of the trustees of the Estate of Marshall Field. On December 4, 1934, Nealon caused a notice to be served on Windsor Amusement Company that under an order of the superior court of Cook county, a purported copy of which was attached to the notice, the said receivership was terminated, and demanding possession of the premises. In January, 1935, a lease for a term commencing December 1, 1934, and ending on November 30, 1935, was entered into between Nealon, as lessor, and Windsor Amusement Company and Harry Balaban, defendants herein, as lessees. It provided for a substantially higher rental than that provided in the Colnon lease and under it certain rents were paid by the lessees to Nealon. On January 4, 1935, Nealon conveyed the premises, by a quitclaim deed, to plaintiff, which took title for the benefit of the trustees of the Estate of Marshall Field and still retains it. On July 3, 1935, plaintiff leased the premises to Aaron J. Jones for a term of five years, to commence at the expiration of the lease between Nealon and defendants. On July 10, 1935, Jones wrote to defendants' representative a letter in which he stated, ''We are going to operate the Dearborn Theatre for the Estate of Marshall Field beginning December 1,'' and inquired as to whether or not any equipment was for sale. On November 30, 1935, Randolph Bohrer, attorney for defendants, wrote the following letter to Jones:

''Your letter of November 27, 1935 addressed to Harry Balaban, with reference to the Dearborn Theatre property, has been turned over to me for reply.

"It is regrettable that you have been led to believe that the lessors of the Dearborn Theatre property would be in a position to deliver possession of that property to you on December 1, 1935, in view of the fact that my client's tenancy and right to possession does not terminate for quite some time to come. I am, therefore, extending the courtesy of advising you in advance that it would be useless to send your representative to the theatre tonight for the purpose of taking possession."

Early in December, 1935, the lease between plaintiff and Jones was canceled by the parties thereto. On December 16, 1935, plaintiff served on defendants the following written demand for possession of the premises:

"To: Windsor Amusement Company, a corporation, and

Harry Balaban.

"The undersigned hereby demands immediate possession of the following described premises:

"The portion of the building now being used as a theatre and commonly known and described by street numbers as 40 West Division Street, Chicago, Illinois, and legally described as follows, to-wit: (Here follows a legal description of the property.)

"Dated: December 16, 1935.

"Continental Illinois National Bank and Trust Company of Chicago, as Trustee under Agreement dated January 9, 1935, and known as Trust 29428.

By Wilson & McIlvaine
Its attorneys

"Received a copy of the foregoing notice this 16th day of December 1935

"Windsor Amusement Company
By Harry Balaban
President
Harry Balaban (SEAL)"

As possession was not forthcoming plaintiff, on December 19, 1935, commenced the instant suit.

Defendants contend that "a lease from the plaintiff to Aaron Jones, for a five year term commencing December 1, 1935, deprives the plaintiff of the right to immediate possession, which is essential to maintain this action of forcible detainer, during the term of said lease"; that "even if the defendants are wrongfully holding over, as between the plaintiff and Jones, Jones has the right of immediate possession and he alone has the right to bring that action for the possession of the premises." Defendants occupied the premises from December 1, 1934, to November 30, 1935, under the one-year lease from Nealon, nominee of the trustees of the Estate of Marshall Field, and paid certain rents thereunder. They failed to deliver possession of the premises at the expiration of the lease and continue to occupy them. The correctness of the principle of law urged by defendants in support of the instant contention is not questioned, but it has no application to the facts of this case. There is oral testimony that the lease between plaintiff and Jones was canceled by the parties thereto sometime between December 2, 1935, and December 5, 1935. Defendants offered in evidence that lease, which bears upon its face the following:

"December 2, 1935.
"The foregoing lease is hereby cancelled.
"Continental Illinois National Bank and Trust Company of Chicago, as Trustee under Agreement dated January 9, 1935 and known as Trust No. 29428.
By Charles H. Binney
Aaron Jones (Seal)"

Jones testified that after December 5, 1935, he claimed no right to the Dearborn Theatre under the lease be-

tween plaintiff and himself. There is not the slightest merit in the instant contention of the defendants.

Defendants contend that ''the Court erred in excluding the defendants' cross examination and evidence contradicting the purported legal cancellation of the Jones lease.'' We have considered the argument of defendants in support of this contention and find it without merit.

Defendants contend that ''the plaintiff, not having the written authorization of the beneficiaries as required by the trust agreement whereunder it holds title, was without power to institute this suit.'' We find no merit in this contention. The trust agreement under which plaintiff holds title provides:

''It is understood and agreed by and between the Trustee and any person . . . that the interests of any beneficiary herein shall consist solely of a power of direction to deal with the *title* to said property and the right to receive or direct the disposition of the proceeds from the rentals and sale or other disposition of said premises . . . . *The Trustee is the sole owner of the real estate held by it hereunder and so far as the public is concerned has full power to deal with it.*'' (Italics ours.)

If the instant proceeding involved a dispute between plaintiff, as trustee, and the beneficiaries of the trust, the authorities cited by defendants might be applicable. The term ''public,'' used in that portion of the trust agreement which we have quoted and italicized, applies to defendants' status and plaintiff had full power to deal with the property so far as defendants are concerned. There were three trustees of the Marshall Field Estate, the plaintiff bank, George Richardson, and Marshall Field. Richardson testified that he authorized the institution of the suit. The manager of the property of the Estate of Marshall Field also testified for plaintiff.

Defendants contend that "defendants are entitled to possession until April 30, 1938 under the five year Colnon-Windsor lease, there being no showing that said lease was terminated by its terms or by the termination of the Colnon receivership." It is somewhat difficult to understand the argument of defendants in support of the instant contention. The following quotation from defendants' brief will, perhaps, present their position: "The one year Nealon-Windsor lease was a substitution of but one year of the Colnon-Windsor term and obviously not a cancellation or substitution of the entire three and one-half year balance of that Colnon-Windsor lease." This contention is an afterthought. Defendants offered the evidence of one of the attorneys for defendants to the effect that he, as a representative of the Windsor Amusement Company, sought to obtain from the trustees of the Garibaldi Trust an agreement in writing by the terms of which the trustees would consent to and approve the Colnon-Windsor Amusement Company lease so long as the Amusement Company kept all of the covenants contained in the said lease "to be performed and kept by the Lessee thereof," and that if the said trustees acquired or became invested with Colnon's interest in the said lease the said trustees agreed to be bound as lessors by the covenants and agreements thereof to the same extent as if they were the original lessor thereunder. It is conceded that the written agreement presented to the trustees of the Garibaldi Trust by the said representative of the Windsor Amusement Company was never signed or executed by them. From the foregoing it is clear that the Windsor Amusement Company's attorney and representative recognized the fact that the Colnon lease expired when the court ended the receivership. The Colnon lease, as we have heretofore stated, provided that the term of the lease should in no event exceed the receivership, and that

the rights of the lessee under the lease were expressly subject to that provision. The Windsor Amusement Company was the sole lessee under the Colnon lease, while it and Harry Balaban are joint lessees under the Nealon lease. Balaban had no rights under the Colnon lease. The lease to defendants called for a higher rental than was specified in the Colnon lease. We are unable to see any merit in defendants' contention that they are entitled to possession and final judgment under the Colnon-Windsor lease. Defendants, in effect, are attempting to attack the title of their landlord. To defeat the instant proceeding they attempt to revitalize the Colnon lease and the Jones lease, and to devitalize the one under which they held possession of the premises. In connection with the instant contention defendants argue that plaintiff failed to prove by proper evidence the termination of the Colnon receivership. On December 5, 1934, Nealon served on Windsor Amusement Company a written notice that the receivership of Colnon in the foreclosure proceeding had been terminated by order of court and that by reason of said termination the term of the Colnon-Windsor Amusement Company lease was ended, and he demanded possession of the premises on or before December 5, 1934. Attached to this notice were what purport to be copies of two orders of court, signed by Judge McGoorty, entered in November, 1934, showing that the Colnon receivership had been terminated; that the report and account of Colnon as receiver was confirmed and approved and his bond as receiver released. The Windsor Amusement Company never made answer to this notice nor questioned it in any way until the trial. As one of the lessees under the Nealon lease it recognized, in effect, the termination of the receivership. As heretofore stated, Balaban had no rights under the Colnon lease. If defendants really questioned the termination of the receivership they had ample opportunity during the trial to prove

that the receivership had not been terminated, but they failed to offer any proof on this subject.

The defense to the instant proceeding is devoid of merit. By the summer of 1935 the great depression was passing, there had been a steady improvement in general conditions, and it was becoming desirable, apparently, to retain possession of the premises. The theory of claiming a right of possession of the premises under the Colnon lease was evolved when defendants learned that plaintiff had made a lease of the premises to Jones, who was also engaged in the theater business.

The judgment of the municipal court of Chicago is a just one and it should be and it is affirmed.

*Judgment affirmed.*

John J. Sullivan, P. J., and Friend, J., concur.